UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

ANTWON FRENCH            )
AKA MARKELL MOORE        )
                        )
     *Plaintiff*,        )
                        )
v.                       )          5:20-cv-058-JMH
                        )
DAVID BRYAN HESTER, *et al.*,  )
                        )   **MEMORANDUM OPINION AND ORDER**
     *Defendants*.       )

* * *

This matter is before the Court on several pending motions: Defendant David Bryan Hester's ("Hester") Motion to Dismiss for Failure to State a Claim [DE 18], Defendant Lexington-Fayette Urban County Government's ("LFUCG") Motion to Dismiss for Failure to State a Claim [DE 21], and Defendant Lou Anna Red Corn's ("Red Corn") Motion to Dismiss for Failure to State a Claim [DE 25]. For the reasons stated below all the Motions will be granted.

## I.   FACTUAL BACKGROUND

In July of 2018 Plaintiff Antwon French met and entered into a romantic relationship with Cecilia Rubio. [DE 16 at ¶ 25]. In September of 2018, Rubio informed French that she was pregnant with French's child. [*Id*. at ¶ 26]. The child was born on or around May 13, 2019. [*Id*. at ¶ 28]. French was at the hospital for the birth, was named as paternal parent on all hospital documentation including the birth certificate, had his address as the child's residence as established by Rubio, and left the hospital with the

child and Rubio to stay at French's home on May 15, 2019. [*Id.* at ¶¶ 29-31].

On May 17, 2019, Rubio left the child in French's care. French claims he was unable to reach Rubio for several days. [*Id.* at ¶¶ 32-33]. After caring for the child for approximately one week, French took leave from work and traveled with the child to California to visit his ailing great grandmother. [*Id.* at ¶¶ 34-35].

Thereafter, Rubio contacted Defendants to report that French had interfered with her care of the child. [*Id.* at ¶ 36]. On May 29, 2019, a child custody proceeding occurred in Fayette Circuit Court resulting in Rubio being awarded temporary custody. [*Id.* at ¶ 36, ¶¶ 39-40]. An arrest warrant was obtained and LFUCG provided California law enforcement agencies with such information. [*Id.* at ¶¶ 43-44]. On June 19, 2019, French was arrested in California on the Kentucky arrest warrant, the child was seized and placed with protective services, and French remained in custody until he was extradited back to Lexington in January of 2020. [*Id.* at ¶¶ 45-53]. On February 10, 2020, a grand jury dismissed all charges against French. [*Id.* at ¶ 55].

## II. PROCEDURAL HISTORY

French, proceeding pro se, filed his Complaint with the Court against "Jefferson County, [doing business as the] Lexington Police Department" and David Bryan Hester, a Lexington police

2

officer. [DE 1]. In an initial screening pursuant to 28 U.S.C. § 1915(e)(2), the Court addressed the confusion regarding the first defendant clarifying that Fayette County opposed to Jefferson County was the proper location, that French could not sue the Lexington Police Department because it is not a legal entity capable of being sued, if French actually intended to sue LFUCG then the complaint must fail because he made no allegations that the facts complained of were the result of a county policy or custom, and ordering Defendant Hester to file an Answer. [DE 7].

Hester then filed a motion to dismiss the original Complaint for failure to state a claim. [DE 11]. In response, counsel entered an appearance for French and moved for leave to file an amended complaint [DE 14], which the Court granted [DE 15]. The Amended Complaint added LFUCG and the Fayette County Kentucky Commonwealth's Attorney, Lou Anna Red Corn, as additional defendants. [DE 16]. Thereafter, all three Defendants filed their respective motions to dismiss [DE 18, DE 21, and DE 25].

Plaintiff asserts a mixture of federal and state-law claims against Defendants: (1) violation of Plaintiff's Fourth and Fourteenth Amendment rights, (2) *Monell* Claim for municipal liability, (3) state-law claim for intentional infliction of emotional distress, (4) state-law claim for fraudulent and negligent misrepresentation, (5) state-law claim for false

3

imprisonment, (6) state-law claim for negligence, and (7) state-law claim for negligent infliction of emotional distress.

## III. ANALYSIS

### A. 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be attacked for failure "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[A] legal conclusion couched as a factual allegation' is not entitled to a presumption of truth." *Crawford v. Tilley*, No. 20-6391, 2021 U.S. App. LEXIS 30268, at *16 (6th Cir. Oct. 8, 2021)(citing *Iqbal*, 556 U.S. at 678). "A motion to dismiss is properly granted if it is beyond doubt that no set of facts would entitle the petitioner to relief on his claims." *Computer Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 333 (6th Cir. 2006).

When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)(citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court

need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

While Rule 12 of the Federal Rules of Civil Procedure states that if "matters outside the pleadings are not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," an exception provides that "a court may consider matters outside of the pleadings without converting to a Rule 56 motion if the documents...are 'referred to in the complaint and are central to the claims contained therein.'" *Vidal v. Lexington Fayette Urban Cty. Gov't, Civil Action No. 5: 13-117-DCR, 2014 U.S. Dist. LEXIS 124718, at *4 (E.D. Ky. Sep. 8, 2014)*(citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008))(analyzing the matter under the Rule 12 standard even though the court considered the state court criminal proceedings which were outside the pleadings). Accordingly, this Court will consider Hester's June 11, 2019, criminal complaint against French [DE 27-1] because the alleged misstatements in the document are central to multiple allegations in the Complaint.

## B. RED CORN'S MOTION TO DISMISS

Plaintiff's Amended Complaint names Red Corn as the Fayette Commonwealth's Attorney, presumably in her official and individual capacity. Red Corn moves the Court to dismiss the charges against her in her individual capacity because she is entitled to

5

prosecutorial immunity and the charges against her in her official capacity because they are barred by sovereign immunity. Additionally, Red Corn argues the Amended Complaint fails to state a claim upon which relief can be granted under the 12(b)(6) standard.

### 1. OFFICIAL CAPACITY

To the extent French is suing the Commonwealth's Attorney's Office under § 1983 claims, such claims must be dismissed as the Commonwealth's Attorney's Office is entitled to sovereign immunity. States are immune from suit unless the General Assembly has waived its immunity, but this Court "is unaware of any act by the General Assembly waiving immunity in the present case, and the plaintiff has not indicated otherwise." *Joseph v. Office of Perry Cty. Commonwealth Atty.*, No. 6:14-97-KKC, 2014 U.S. Dist. LEXIS 81975, at *4 (E.D. Ky. June 16, 2014)(citing *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001)); *see also Walden v. Pryor*, No. 5:18-CV-171-TBR, 2019 U.S. Dist. LEXIS 97699, at *5 (W.D. Ky. June 10, 2019)(holding that the claims against the Commonwealth's Attorney in her official capacity are precluded under the doctrine of sovereign immunity).

Because official capacity suits "generally represent [ ] another way of pleading an action against an entity of which an officer is an agent," a claim brought against Red Corn in her official capacity is deemed a claim against the Commonwealth of Kentucky.

6

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Joseph,* 2014 U.S. Dist. LEXIS 81975, at *2 (citations omitted)("The Commonwealth's Attorney's office, which is a constitutionally-established office of the state government, is without question an integral extension of the state such that suit against the office may be legitimately classified as brought against the Commonwealth."). Because there has been no waiver, Red Corn is entitled to sovereign immunity and any suit against her or the Commonwealth's Attorney's Office must be dismissed.

Additionally, the Eleventh Amendment to the U.S. Constitution bars a state agency from being sued in federal court and Kentucky has not waived such immunity. *See York v. Warren Cty. Commonwealth Attorney's Office,* No. 1:08CV-P16-R, 2008 U.S. Dist. LEXIS 8868, at *5 (W.D. Ky. Feb. 5, 2008)("[T]he Eleventh Amendment acts as a bar to all claims for relief against the Warren County Commonwealth Attorney's Office."). Further, Red Corn in her official capacity does not constitute a "person" subject to suit within the meaning of § 1983 when monetary damages are sought. *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

### 2. INDIVIDUAL CAPACITY

To the extent French brings claims against Red Corn in her individual capacity, those claims must fail because Red Corn was acting within her prosecutorial duties and, therefore, entitled to absolute immunity. "The doctrine of prosecutorial immunity

7

provides that state prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties." *Lunsford v. Elsbernd,* No. 12-58-DLB, 2012 U.S. Dist. LEXIS 91220, at *8 (E.D. Ky. June 29, 2012)(citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)).

This Court must determine whether Red Corn was acting within the scope of her prosecutorial duties:

> As a general rule, prosecutors enjoy absolute immunity for acts taken "in initiating a prosecution and in presenting the State's case." *Vakilian v. Shaw*, 302 F. App'x 350, 357 (6th Cir.2008)(quoting *Imbler*, 424 U.S. at 431). Absolute prosecutorial immunity also attaches to "administrative or investigative acts necessary for a prosecutor to initiate or maintain a criminal prosecution." *Id.* at 358 (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1446-47 (6th Cir.1997)). Therefore, the decision to file a criminal complaint and obtain an arrest or search warrant are quasi-judicial duties necessary to initiating a criminal prosecution and are protected by prosecutorial immunity. *Id.*.... Whether or not a warrant was supported by probable cause is not determinative of whether prosecutorial immunity applies. *Howell v. Sanders*, 669 F.3d 344, 350 (6th Cir.2012).

*Id.* Prosecutorial immunity casts a wide net of protection. "Activities performed within a prosecutor's normal functions are protected, even if the prosecutor makes mistakes or acts with 'excessive zeal.'" *Miller v. Montgomery Cty.*, Civil Action No. 5: 18-619-DCR, 2019 U.S. Dist. LEXIS 20787, at *8 (E.D. Ky. Feb. 8, 2019)(citing *Rouse v. Stacy*, 478 F. App'x 945, 955 (6th Cir. 2012)). Further, "[p]rosecutorial immunity applies 'so long as the

general nature of the action in question is part of the normal duties of a prosecutor,' even when that immunity 'bar[s] § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor.'" *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 725 (6th Cir. 2011)(citing *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009)).

Red Corn argues that her actions which constitute Plaintiff's claims—"participation in a child custody hearing as advocate," "assessing strength of evidence", "participation in a child custody hearing as advocate, and "presenting a case to the grand jury"—are all within the scope of her prosecutorial duties. [DE 25 at ¶ 10]. The Court agrees that all these actions clearly fall within a prosecutor's normal functions for which she is entitled to immunity.[1]

While Plaintiff's claims fail because Red Corn and the Commonwealth's Attorney's Office are cloaked with immunity, the claims would fail nonetheless because they do not state a claim upon which relief could be granted under the Rule 12(b)(6) standard. In the Complaint, Plaintiff asserts that "on or about May 29, 2019 LFUCG and CORN allowed a prosecutor to unfairly, intentionally and negligently proceed with a child custody

---

[1] "Prosecutors...have absolute immunity for the following actions: appearances at probable cause and grand jury hearings, evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings, and preparation of witnesses for trial." *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010).

proceeding against PLAINTIFF in Circuit Court without providing PLAINTIFF notice of the proceeding." [DE 16 at ¶ 39]. In his Response, Plaintiff adds more details arguing that his "right to live together in companionship and society with one's child" and his due process right were violated because "the evidence indicates that the Defendant knew that French had a constitutional right to a proper investigation of the matter and notice of the hearing held on May 29, 2019" and the "Defendant did not ensure that French receive the constitutional rights afforded to him by the Fourth and Fourteenth Amendment." [DE 29 at 5]. Plaintiff further asserts Red Corn should be held liable as a supervisor because she

> "allowed her subordinates to improperly investigate all the facts of this case and also allowed purposeful omission of facts about Ms. Rubio's parenting history at the hearing on May 29, 2020[sic]. Furthermore, the Defendant allowed the proceedings to continue knowing that French had not been given notice so that the court would not be made aware of the negative parenting history with the intent to remove French's child from his custody."

[DE 29 at 6].

Red Corn informs the Court she was not involved in the child custody proceeding on May 29, 2019, before the Fayette Family Court or the criminal proceedings in the Fayette District Court involving the warrant. Only "after a probable cause determination by the Fayette District Court, [did] Defendant Red Corn's Office review[] the pending charges for presentation to the Fayette County Grand Jury, at which point the chargers were dismissed." [DE 30 at 10].

Plaintiff's claims must fail because while the Court must accept Plaintiff's version of facts as true, the Court is not required to accept as true legal conclusions contradicted by statute. *Ashcroft*, 556 U.S. at 678)("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions*.").* All of Plaintiff's contentions focus on the May 29th proceeding where a temporary custody order was issued, however, KRS 403.800-403.880, KRS 406.021, and KRS 407.5307 state that such proceedings are prosecuted by the Fayette County Attorney's Office. Further, the jurisdiction of the Commonwealth's Attorney's Office is limited by KRS 17.725 to felony criminal prosecutions in the Circuit Court. [DE 25 at 14 n. 4]. According to Kentucky law it would be impossible for Red Corn to have been a part of the May 29th, 2019, proceeding making the allegations in the Complaint impossible as well.

Any argument about supervisory liability must also fail. French's Complaint broadly asserts that Red Corn "in her capacity as a supervisory defendant had authority to employee and supervise prosecutors and is responsible for the actions of the prosecutors who act under the color of the Commonwealth of Kentucky's laws" [DE 16 at ¶ 21], that "CORN had a duty to adequately train and supervise and discipline her attorneys" [*Id.* at ¶ 66], and that "CORN was deliberately indifferent to such duties." [*Id.* at ¶ 68]. Any supervisor liability must fail because the Amended Complaint

11

is bare of any factual allegations that Corn took any affirmative actions, encouraged misconduct, or directly participated in it. *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013)("There must be some conduct on the supervisor's part to which the plaintiff can point that is directly correlated with the plaintiff's injury."). A failure-to-train claim also fails because French has not plead facts indicating an official policy or custom.

In their Response, Plaintiff does not argue any substantive law of why supervisor liability is proper, but just argues 12(b)(6) motions are not the appropriate time for the court to make a determination. Plaintiff further argues:

> "[he is at] a complete disadvantage because of the Commonwealth's reluctance to produce information and evidence related to this case. Plaintiff's contentions are plausible on their face and will only improve once discoverable evidence is shared. The Defendant wants the case to go away because she fears what lies beneath the ocean of discovery."

[DE 29 at 8]. Unfortunately, declaring that "contentions are plausible on their face" does not pass the 12(b)(6) standard. While Plaintiff seeks more information about the May 29th custody hearing, it is clear that Red Corn and the Commonwealth's Attorney's Office do not have that information as they were not involved in the proceedings. Plaintiff's relief lies in another court with different defendants.

12

In conclusion, Plaintiff's claims against Red Corn in her official capacity must fail due to sovereign immunity. The claims against Red Corn in her individual capacity must similarly fail because she is cloaked with prosecutorial immunity. However, even if she was not immune, such claims would fail nonetheless because French has failed to state a plausible claim upon which relief could be granted.

### C. LFUCG'S MOTION TO DISMISS

The Court begins by addressing the federal claims. French's claims against LFUCG under § 1983 must be dismissed because "the plaintiff must first establish that the agents of the municipality have violated a constitutional right" which as described in this memorandum, Plaintiff has failed to do. *Williams v. City of Georgetown*, Civil Action No. 5: 18-171-DCR, 2018 U.S. Dist. LEXIS 188561, at *20 (E.D. Ky. Nov. 5, 2018)(citing *Cooper v. County of Washtenaw*, 222 F. App'x. 459, 473 (6th Cir. 2007))(dismissing the § 1983 claims against the municipality because "the plaintiff has not asserted facts sufficient to state a plausible claim that the officers in the present case violated Burns's constitutional rights" so the Court did not need to partake in further analysis).

However, even if the Court were to conduct a full analysis, Plaintiff has failed to state a plausible claim because a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. New York City Dep't*

13

*of Soc. Servs.*, 436 U.S. 658 (1978); *see also Doe v. Clairborne Cnty.*, Tenn., 103 F.3d 495, 507 (6th Cir.1996*)("respondeat superior* is not available as a theory of recovery under section 1983"). Instead, a plaintiff must show the existence of a custom or policy that was the "moving force" behind the violation of the plaintiff's constitutional rights and the actions of the agent. *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir.2012).

In the § 1983 context, a plaintiff's "complaint must contain more than mere labels, conclusions, and the elements of his cause of action" but actually "identify and describe the official policy or custom that resulted in a constitutional violation." *Horn v. City of Covington*, No. 14-73-DLB-CJS, 2015 U.S. Dist. LEXIS 85323, at *11 (E.D. Ky. July 1, 2015). This district has repeatedly granted motions to dismiss § 1983 claims when the plaintiff does not provide factual support or merely recites the legal requirements for *Monell* liability. *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F.Supp.2d 747, 750 (M.D. Tenn. 2010); *Kustes v. Lexington-Fayette Urban Cty. Gov't*, No. 5:12-323, 2013 U.S. Dist. LEXIS 125763, at *4 (E.D. Ky. Sep. 3, 2013); *Vidal v. Lexington Fayette Urban Cty. Gov't*, Civil Action No. 5: 13-117-DCR, 2014 U.S. Dist. LEXIS 124718, at *7 (E.D. Ky. Sep. 8, 2014)(citations omitted)("And to survive a motion to dismiss, the plaintiff must describe what the official custom or policy was and describe how it was violated.").

14

This district granted the City of Covington's motion to dismiss because the plaintiff had "not identified a specific Covington policy or custom that resulted in excessive force, a failure to intervene, or false arrest," nor did he provide "facts or examples to support his statement that Covington failed to properly train officers in the use of force," but instead just generally alleged that Covington had "failed to discipline officers for using improper force, and that due to a lack of training and supervision Covington officers have withheld, coerced, and fabricated evidence" without ever citing "a single prior instance or statistic in support of those claims." *Horn*, 2015 U.S. Dist. LEXIS 85323, at *13.

French's complaint contains only conclusions, with no references to any specific customs.[2] French states that LFUCG was "was deliberately indifferent" to their duty to train, but case law is clear that "[m]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." *Miller v. Calhoun Cty.,* 408 F.3d 803, 816 (6th Cir. 2005). While French asserts that "the Department itself seems uninterested in

---

[2] Count I and II allege § 1983 violations. Count I, violation of the Fourth and Fourteenth Amendments, lumps Defendants together, asserting that "Defendants' above described conduct violates PLAINTIFF's right." In Count II, French specifically claims "LFUCG had a duty to adequately train, supervise and discipline their deputy officers", "LFUCG was deliberately indifferent to such duties," and LFUCG "created an atmosphere in which officers believe they may act with impunity when engaging in unlawful conduct, as the Department itself seems uninterested in complying with state statues." [DE 16 at 65, 67, 69].

complying with state statues[sic]" which "created an atmosphere" where "officers believe they may act with impunity when engaging in unlawful conduct," this itself is a mere conclusion, and it is unclear what state statutes LFUCG was not following. These are "naked assertions devoid of further factual enhancement [and] contribute nothing to the sufficiency of the complaint." *Kustes*, 2013 U.S. Dist. LEXIS 125763, at *4; *Vidal 2014 U.S. Dist. LEXIS 124718, at *7* (granting motion to dismiss because the plaintiff did not plausibly plead that LFUCG had a custom in place where the complaint merely alleged that LFUCG "adopted policies, practices, or customs that allow ... the use of excessive force when other more reasonable and less drastic measures are available").

### D. HESTER'S MOTION TO DISMISS

The Amended Complaint appears to assert claims against Hester in his official and individual capacity. The Court first addresses the federal claims. Hester argues dismissal is proper because he is entitled to several forms of immunity.

#### 1. OFFICIAL CAPACITY

To the extent the Amended Complaint brings § 1983 claims for constitutional violations against Hester in his official capacity, such claims must also fail because "[s]uing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself." *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006)(citing

16

*Hafer v. Melo*, 502 U.S. 21, 25 (1991)). The Court must construe a claim against a police officer in his official capacity, as a claim against the entity itself and "will dismiss the official-capacity claims as duplicative." *Horn*, 2015 U.S. Dist. LEXIS 85323, at *9 (citing *Thorpe ex rel. D.T. v. Breathitt Cnty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013)). To the extent French brings claims against Hester in his official capacity, such claims are construed as being asserted against LFUCG, and as previously discussed, must be dismissed.

## 2. INDIVIDUAL CAPACITY

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016)(citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Courts apply a two-pronged test to determine whether a police officer is entitled to qualified immunity: "(1) whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Mullins v. Cyranek,* 805 F.3d 760, 765 (6th Cir. 2015). Whether a police

officer is entitled to qualified immunity is a question of law to be determined by the court. *Heflin v. Stewart County, Tenn.*, 958 F.2d 709, 717 (6th Cir. 1992).

The Sixth Circuit has "repeatedly cautioned, 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity'" as factual development is often necessary before the court can determine that the state official violated a clearly established federal law, making summary judgment the more appropriate point to make the qualified immunity determination. *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021)(quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). While this may be the *general* approach, the Sixth Circuit has "also affirmed grants of judgment on the pleadings where the plaintiff did not plead a clearly established substantive due process violation, so this statement is not an absolute prohibition." *Newell v. Cent. Mich. Univ. Bd. of Trs.*, No. 20-1864, 2021 U.S. App. LEXIS 26703, at *18 (6th Cir. Sep. 2, 2021).

A very recent Sixth Circuit opinion explained "that general statement is at best imprecise" and warns against a presumption of denying a motion to dismiss on qualified immunity grounds, noting that "the validity of such defenses may be apparent from the face of the complaint, rendering a motion to dismiss appropriate," that the goal of qualified immunity is "not only to help defendants avoid unnecessary trials but also to allow defendants to avoid

18

pre-trial discovery where the lawsuit is insubstantial," that the Supreme Court "has not hesitated to affirm the dismissal of a lawsuit on qualified immunity grounds without mentioning any presumption against doing so," and that "common sense also proves the point." *Crawford v. Tilley*, No. 20-6391, 2021 U.S. App. LEXIS 30268, at *18-*23 (6th Cir. Oct. 8, 2021).

In other words, the reasoning behind the general approach of denying Rule 12(b)(6) motions based on qualified immunity—that more factual development is often necessary—only applies to the clearly-established prong and not to the violation-of-a-constitutional-right prong:

> Even if it is not appropriate to grant a motion to dismiss based on qualified immunity, dismissal is still appropriate if the plaintiff fails to state "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Thus, dismissal is proper if the plaintiff fails to assert a plausible claim that a constitutional right has been violated for the qualified immunity analysis.

*Williams v. City of Georgetown*, Civil Action No. 5: 18-171-DCR, 2018 U.S. Dist. LEXIS 188561, at *10 (E.D. Ky. Nov. 5, 2018)(granting defendant police officer's motion to dismiss). Because the Court concludes that Hester committed no underlying constitutional violation, the Court sees no reason to postpone granting the motion to dismiss.

As the first step of the two-pronged approach, the Court must determine whether Hester violated French's constitutional rights. French submits the following accusations:

> Defendants acted under color of law by maliciously prosecuting, deliberately interfering with civil proceeding and ultimately detaining PLAINTIFF without reasonable investigation and lawful justification and thereby depriving PLAINTIFF of certain constitutionally protected rights, including, but not limited to: The right to procedural due process, substantive due process and the right governmental inference of custody and companionship with his child., as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

[DE 16 at ¶ 63]. While it is difficult to deduce French's exact assertions, the Court analyzes potential arguments that French is making. In his Response French clarifies his constitutional right "to live together in companionship and society with one's child" and to not be subjected to "deliberate government use of perjured testimony and fabricated evidence in the dependency court proceeding designed to rupture the familial relationship with French and his child" were violated. [DE 26 at ¶¶ 2-3].

First, to the extent French claims constitutional violations based upon Hester allegedly fabricating evidence and misrepresenting facts in an affidavit, plaintiff cannot defeat the motion to dismiss because the Complaint only contains conclusory allegations, which the Court is incapable of accepting as true without more. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d

236, 240 (2d Cir. 2002)("[C]onclusory allegations or legal conclusions masquerading as factual conclusions...will not suffice to prevent a motion to dismiss."). The following are the only times in the "Statement of Facts" that Hester is specifically mentioned:

> 41. Upon receipt of the Fayette County Circuit Court temporary custody HESTER filed a criminal complaint against PLAINTIFF.
> 42. HESTER did not reasonably investigate or research the validity of Ms. Rubio's claims or Ms. Rubio's unsound parenting history.
> 43. On or about June 11, 2019 HESTER intentionally and negligently misrepresented facts in an affidavit to obtain a criminal arrest warrant against PLAINTIFF for custodial interference.

While paragraph 41 is a factual allegation and must be accepted as true, that Hester filed a criminal complaint against French upon receipt of the Fayette County Circuit Court temporary custody order, this cannot alone support a claim for fabrication of evidence as there is no mention of any evidence even being presented. The allegations in paragraphs 42 and 43 are conclusory and not entitled to a presumption of truth.

Second, Plaintiff cannot survive the motion to dismiss based on his theory of fabrication of evidence because the assertions are not that Hester himself, fabricated the evidence, but that Rubio made the false accusation and Hester "did not reasonably investigate or research the validity of Ms. Rubio's claims." [DE 16 at ¶ 42]; *Harasz v. Katz*, 239 F. Supp. 3d 461, 494 (D. Conn. 2017)(granting motion to dismiss fabrication of evidence assertion

for police officer where "the Amended Complaint's criticism of Trantalis is not that he made up false inculpatory evidence, it is that he failed to unearth existing exculpatory evidence.). Yet, "[t]here is no constitutionally protected right to the manner in which a criminal investigation is conducted" and an "'incompetent or negligent investigation' is insufficient to establish a constitutional violation." *Garner v. Harrod*, 656 F. App'x 755, 760 (6th Cir. 2016).

Third, Plaintiff cannot survive the motion to dismiss based on his theory of misrepresenting facts in an affidavit because the Complaint is generic and wholly devoid of the subject of those misrepresented facts. *Virgil v. City of Newport*, No. 16-224-DLB-CJS, 2018 U.S. Dist. LEXIS 3708, at *29 (E.D. Ky. Jan. 9, 2018). A plaintiff cannot survive a motion to dismiss if "his factual allegations regarding the evidence used in the criminal case against him do not actually include any specific claims of fabrication." *Amory v. Katz,* No. 3:15-CV-01535 (VAB), 2016 U.S. Dist. LEXIS 175342, at *9 (D. Conn. Dec. 19, 2016)(granting motion to dismiss because "[r]ather than accusing Detective DeLouis and Detective Mullin of creating false evidence against him, Mr. Amory accuses them of omitting potentially helpful information...The only allegations that include actual fabrication or falsification of evidence are conclusory statements that the officers' descriptions of events were "false").

The Sixth Circuit is clear that terminology like "'intentionally, maliciously, [or] with...reckless disregard' ...is insufficient standing on its own" to state a plausible claim, but that reference to the complaint's "factual context" may "offer enough substance" to allow the claim to survive. *Mills v. Barnard*, 869 F.3d 473, 481 (6th Cir. 2017). The complaint merely states that Hester "intentionally and negligently misrepresented facts in an affidavit." Because Plaintiffs do not provide the specific claims of fabrication they purport Hester to have made, Plaintiffs have failed to state a plausible claim.

However, in his Response to the Motion to Dismiss, Plaintiff attached the Criminal Complaint Hester filed against French and pointed to a specific fallacy. The Criminal Complaint generated by Hester on June 11, 2019, states "during 5/17/2019 to 6/10/2019 in FAYETTE County, Kentucky, the above named defendant unlawfully committed the offense of Custodial Interference Felony when he has refused to return his daughter to the care of the listed victim despite a court order issued awarding her temporary custody on 5/29/2019." [DE 27-1]. However, French claims this statement is fraudulent because "Hester knew French had rightful custody of his daughter from 5/17/2019 to 5/27/2019." [DE 27 at 4].

While this is a specific claim of fabrication, this minor discrepancy does not save Plaintiff's claim because probable cause for the arrest nonetheless existed:

23

> To show in response to a motion to dismiss
> that the arrest was wrongful, [Plaintiff] must
> plausibly allege that it was unsupported by
> probable cause. *See Thacker v. City of
> Columbus*, 328 F.3d 244, 255 (6th Cir.2003). An
> officer possesses probable cause when, at the
> moment the officer seeks the arrest, "the
> facts and circumstances within [the officer's]
> knowledge and of which [she] had reasonably
> trustworthy information [are] sufficient to
> warrant a prudent man in believing that the
> [plaintiff] had committed or was committing an
> offense." *Beck v. State of Ohio*, 379 U.S. 89,
> 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

*Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015). A court order is certainly "reasonably trustworthy information" that is "sufficient to warrant a prudent man in believing that [French] had committed" custodial interference. The different date does not change the fact that a court determined French had committed the offense of custodial interference or that French was still committing the said violation.

Further, "[w]e have held that in the context of an officer's application for an arrest warrant from a neutral magistrate, the officer violates clearly established law when he makes material omissions that are 'deliberate ... or show[ ] reckless disregard for the truth.'" *Wesley*, 779 F.3d at 429 (citing *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir.2006)). The dates are not material. Even if the criminal complaint stated that the custodial interference began 10 days later, there would still have been probable cause to arrest because there was a court order

granting temporary custody to Rubio and the infant had yet to be returned. The date of the offense is trivial as the affidavit contained other particularized facts. This error cannot serve as the basis for a fraudulent affidavit accusation.

To the extent French claims the Court's award of temporary custody to Rubio violated his federal due process right as he never received notice of the custody proceedings, no constitutional violation can be established because Hester cannot be liable for the state court's decision to issue the custody order. Plus, Hester's affidavit for the criminal complaint came after state court had issued the custody order.

As no constitutional violation can be established under any theory based upon the allegations put forward in the Complaint, the motion to dismiss should be granted. While normally a motion to dismiss should not be granted based on qualified immunity, this Court follows the logic established by the Sixth Circuit holding that there is no reason to delay dismissal when the face of the complaint does not state a plausible claim under the 12(b)(6) standard.

**E. STATE-LAW CLAIMS**

Counts III-VII involve actions brought under Kentucky Common Law. Because the Court only has supplemental jurisdiction over French's state-law claims pursuant to 28 U.S.C 1367(a), the Court now declines to exercise jurisdiction over the state-law claims

because all related constitutional and federal-law claims have been dismissed. 28 U.S.C. § 1367(c)(3); *see Williams v. City of Georgetown*, Civil Action No. 5: 18-171-DCR, 2018 U.S. Dist. LEXIS 188561, at *21 (E.D. Ky. Nov. 5, 2018 (*aff'd by Williams v. City of Georgetown* 774 Fed. Appx. 951, 2019 U.S. App. LEXIS 15529, 2019 FED App. 0272N, 2019 FED App. 272N (6th Cir.)(declining to exercise jurisdiction over the state-law claims after dismissing § 1983 claims against the county, city, sheriff, and police officers "[b]ecause all claims associated with the alleged constitutional violations are dismissed").[3]

### F. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff requests that if the Court should find the Complaint incapable of stating a plausible claim, he be given leave to amend the Complaint to support his claim. According to the Federal Rules of Civil Procedure, after a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that a district court should freely grant a plaintiff leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Whether justice would require the allowance of an amendment is a decision vested

---

[3] For the state-law claims French claims LFUCG is liable under the theory of *respondeat superior*. Though declining jurisdiction, the Court acknowledges that "county government is cloaked with sovereign immunity." *Schwindel v. Meade Cty.,* 113 S.W.3d 159, 163 (Ky. 2003). More, a county cannot "be held vicariously liable in a judicial court for the ministerial acts of its agents, servants, and employees." *Id.* To the extent, state-law claims are brought against actors in their official capacity, such actors also possess the same sovereign immunity. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

in the sound discretion of the district court." *Powell v. City of Radcliff*, No. 3:19-CV-00386-GNS-RSE, 2020 U.S. Dist. LEXIS 212555, at *3 (W.D. Ky. Nov. 10, 2020)(citing *Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1294 (6th Cir. 1974)).

"[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." are factors for the court to consider in determining whether leave should be granted under Rule 15. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court focuses on futility noting that "where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993). Having previously been given the opportunity to amend their complaint, Plaintiff still fails to state a plausible claim. Plaintiff provides no details concerning what facts an amended complaint would add, therefore, an amendment would prove futile. While Plaintiff asks the Court's permission to add a state-law claim for malicious prosecution, the Court has already declined jurisdiction over all state-law claims as all federal-law and constitutional related claims have been dismissed.

## IV. CONCLUSION

For the reasons discussed above, it is hereby **ORDERED** as follows:

1. Defendants' Motions to Dismiss [DE 18, 21, and 25] are **GRANTED**;

2. Plaintiff's request to amend his Complaint is **DENIED**;

3. A corresponding judgment is forthcoming.

This the 15th day of February, 2022.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge